Adam Y. Siegel (SBN 238568)
Carmen M. Miranda (SBN 271276)
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
(213) 689-0404 - Office
(213) 689-0430 – Fax
Adam.Siegel@jacksonlewis.com
Carmen.Miranda@jacksonlewis.com

Attorneys for Defendant
CLAIRE'S BOUTIQUES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – CENTRAL DIVISION

| | |
|---|---|
| SHERICE DUNCAN, individually, and on behalf of other members of the general public similarly situated,<br><br>      Plaintiff,<br><br>  vs.<br><br>CLAIRE'S BOUTIQUES, INC., a Colorado corporation; and DOES 1 through 10, inclusive,<br><br>      Defendant. | Case No.: 2:20-cv-5266<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (CAFA)**<br><br>(Filed concurrently with Declarations of Adam Y. Siegel, Danielle Clark, and Michele Reilly; Civil Case Cover Sheet; Notice of Interested Parties; and Corporate Disclosure Statement) |

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF SHERICE DUNCAN, AND PLAINTIFF'S ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant CLAIRE'S BOUTIQUES, INC. ("Defendant") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453, and removes the above-entitled action to this Court from the Superior Court of the State of California for the County of Los Angeles based on the Class Action Fairness Act of 2005 ("CAFA"). In support thereof, Defendant assert the

following:

1.     On April 21, 2020, Plaintiff SHERICE DUNCAN ("Plaintiff") filed a Class Action Complaint against Defendant in the Superior Court of the State of California for the County of Los Angeles entitled *Sherice Duncan, individually and on behalf of other members of the general public similarly situated, Plaintiff, vs. Claire's Boutiques, Inc., a Colorado corporation; and DOES 1 through 10, inclusive, Defendant*, Case No. 20STCV15355, which sets forth the following ten causes of action: (1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime); (2) Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 (Unpaid Minimum Wage); (3) Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 (Failure to Provide Meal Periods); (4) Violation of California Labor Code §§ 226.7. 516, and 1198 (Failure to Authorize and Permit Rest Periods); (5) Violation of California Labor Code §§226(a), 1174(d), and 1198 (Non-Compliant Wage Statements and Failure to Maintain Payroll Records); (6) Violation of California Labor Code §§ 201 and 202 (Wages Not Timely Paid Upon Termination); (7) Violation of California Labor Code § 204 (Failure to Pay Timely Wages During Employment); (8) Violation of California Labor Code §2802 (Unreimbursed Business Expenses); (9) Violation of California Business & Professions Code §§ 17200, *et. seq.*; and (10) Violation of California Business & Professions Code §§ 17200, et. seq. (Unfair Business Practices) (hereinafter the "Complaint").

2.     As stated in paragraphs 31-33 therein, the Complaint is brought as a class action pursuant to California Code of Civil Procedure § 382 on behalf of Plaintiff and "[a]ll persons who worked for Defendants  as non-exempt, hourly paid employees in California, at any time from September 22, 2018, until the date of trial."

3.     As stated in paragraph 34 therein, the Complaint is also brought on behalf of a subclass of individuals, defined as "[a]ll persons who worked for Defendants as non-exempt, hourly paid employees in California who received at least one wage statement within (1) year prior to the filing of the initial complaint until the date of trial."

4.     Plaintiff filed her Complaint and Civil Case Cover Sheet on April 21, 2020. That same day the clerk issued its Notice of Case Assignment.

5.     Defendant first received Plaintiff's Summons and Complaint and Civil Case Cover Sheet when it was served on May 13, 2020.  (Siegel Decl. at ¶4.)  True and correct copies of the Summons, Complaint, Civil Case Cover Sheet, and Notice of Case Assignment are attached as **Exhibit "A"** to the Declaration of Adam Y. Siegel ("Siegel Decl.").

6.     On May 7, 2020, the Court issued a minute order rendering the case complex and staying the matter until the Initial Status Conference on August 27, 2020 at 11:00 a.m., at the Superior Court of California, County of Los Angeles, Central District, Spring Street Courthouse, Department 10 .  (Siegel Decl. at ¶5.)  A true and correct copy of this minute order, along with the certificate of mailing, are attached as **Exhibit "B"** to the Siegel Declaration.

7.     On May 7, 2020, the Court issued an Initial Status Conference Order setting forth the applicable complex litigation procedures.[1]  (Siegel Decl. at ¶6.)  A true and correct copy of the Initial Status Conference Order (Complex Litigation Program) is attached as **Exhibit "C"** to the Siegel Declaration.

8.     On May 28, 2020, Plaintiff filed the Proof of Service verifying Defendant had been served.  (Siegel Decl. at ¶7.)  A true and correct copy of Plaintiff's proof of service, is attached as **Exhibit "D"** to the Siegel Declaration.

9.     As of the date of this Notice of Removal, **Exhibits "A"** though **"D"** to the Siegel Declaration constitute all of the pleadings received or filed by Defendant in this matter.  (Id. at ¶8.)

## TIMELINESS OF REMOVAL

10.     This Notice of Removal has been filed within thirty (30) days after Defendant was first served with a copy of Plaintiff's Summons and Complaint on May 13, 2020. (Id. at

---

[1] The Superior Court's docket indicates this order was entered on May 11, 2020.  However, the order itself is file stamped May 7, 2020.

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT

¶ 4.)  Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.").

## NOTICE TO ALL PARTIES AND STATE COURT

11.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the Los Angeles County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

## VENUE IS PROPER

12.    This action was filed in the Superior Court in and for the County of Los Angeles.  Thus, venue of this action properly lies in the United States District Court for the Central District of California – Central Division pursuant to 28 U.S.C. §§ 84(c)(2) and 1441(a).  Venue of this action is also proper pursuant to 28 U.S.C. § 1391, providing that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and where, based on information and belief, the plaintiff resides.  (Siegel Decl. at ¶4, **Exhibit "A"** ["Complaint"] at ¶15; Declaration of Danielle Clark ("Clark Decl.") at ¶5.)

## REMOVAL BASED ON CLASS ACTION FAIRNESS ACT

13.    Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

14.    In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary Defendant are not States, State officials, or other governmental entities.  28 U.S.C. § 1332 (d)(5).

15.     As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, and – based on the allegations in the Complaint – the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from one of the Defendant.  *See* 28 U.S.C. §§ 1332(d) and 1453. Furthermore, Defendant is not a State, State official, or other governmental entity.

**A.     The Putative Class Contains More Than 100 Members.**

16.     CAFA provides that the district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100."  28 U.S.C. § 1332(d)(5).

17.     Here, Defendant's records identify approximately 1,766 non-exempt employees in the State of California that ended their employment with Claire's Boutiques, Inc. (for various reasons) between September 22, 2018 and the present.  (Clark Decl. at ¶7.) Accordingly, the numerosity requirement for jurisdiction under CAFA is easily satisfied based on solely the number of employees that have ended their employment.

**B.     The Named Defendant Is Not A Government Entity.**

18.     Defendant CLAIRE'S BOUTIQUES, INC. ("Claire's Boutiques, Inc.) is not a State, a State official, or any other governmental entity.  (Declaration of Michele Reilly ("Reilly Decl.") at ¶ 6.)

**C.     Minimal Diversity Is Satisfied Under CAFA.**

19.     The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. 1332(a)-(c).  CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the Defendant are citizens.  28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."); *Bradford v. Bank of Am. Corp.*, No. CV

15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

20.   Citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

21.   For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008). Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.* (C.D.Cal. June 12, 2017, No. CV 17-02871-BRO (SSx)) 2017 U.S.Dist.LEXIS 90131, at *10.) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

22.   Defendant is informed and believes that Plaintiff was, at the time this action was commenced, and still is, a resident and citizen of the State of California. (Clark Decl. at ¶5; Complaint at ¶5.) Furthermore, Plaintiff alleges that she is "a resident of Elk Grove, in Sacramento County, California." (Complaint at ¶5.) Accordingly, Plaintiff is a citizen of the State of California for purposes of removal under CAFA.

23.   For purposes of removal under CAFA, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c).

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT

24.     With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010).  Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities.  *Id*.  A corporation can only have one "nerve center."  *Id.* at 93-94.  In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state.

25.     Defendant was, at the time Plaintiff filed the Complaint, and presently is a corporation organized under the laws of the State of Colorado.  (Reilly Decl. at ¶4.)  At all relevant times, Defendant's company headquarters, and thus its principal place of business, has been in the State of Illinois.  (Id.)  Defendant controls its operations from its headquarters in the State of Illinois.  (Id.)  The State of Illinois is where the majority of Defendant's executive, administrative and management functions are conducted, and from where the majority of Defendant's high-level officers—those that direct, control, and coordinate the company's activities—conduct business.  (Id.)  Most members of Defendant's executive team maintain their offices in the State of Illinois, while none of Defendant's executive officers reside in the State of California.  (Id. at ¶¶4-5.)  Accordingly, for purposes of removal under CAFA, Defendant Claire's Boutiques, Inc. is a citizen of the States of Colorado and Illinois but is not a citizen of the State of California.

26.     Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while Defendant (Claire's Boutiques, Inc.) was – and still is – a citizen of the States of Colorado and Illinois.  28 U.S.C. § 1332(d)(2).

///

///

## D.     The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.[2]

27.     Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly . . . .").

28.     In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim")).  Moreover, the argument and facts set forth in the Complaint may appropriately be considered in determining whether the jurisdictional

---

[2]      Defendant denies each and every allegation set forth by Plaintiff in the Complaint and denies that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other relief.  Defendant also denies that this action can proceed as a class action.  Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

amount in controversy requirement is satisfied.  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)).

29.   Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation."  *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007).   Rather, a defendant seeking removal must prove by a preponderance of the evidence that the aggregate amount in controversy exceeds the jurisdictional minimum.  *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

30.   In *Dart Cherokee Basin Operating Company, LLC v. Owens*, the United States Supreme Court held that where, as here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold."   135 S. Ct. 547, 554 (2014) (emphasis added). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'"  *Adams v. Toys 'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart*, 135 S. Ct. at 554.

31.   Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise.  *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams*,

482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 WL 6982571, at \*4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc*., 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

32.    As a preliminary matter, Plaintiff's Complaint alleges that "Plaintiff's share of damages, penalties, and other relief sought does not exceed $75,000." (Complaint at ¶1.) Plaintiff's Complaint goes on to allege that putative class members are "similarly situated to Plaintiff" (Complaint at ¶31.) and that "Plaintiff's claims…are typical of all class members as demonstrated herein." (Complaint at ¶38(b).)  Based on these allegations, one plausible interpretation of the Complaint is that each putative class member is seeking $75,000 in damages.  As previously stated, Defendant has identified approximately 1,766 non-exempt individuals who ended their employment with Defendant (for various reasons) between September 22, 2018 and the present.  (Clark Decl. at ¶7.)  Based on the Complaint, these 1,766 individuals would be included in Plaintiff's putative class.  (Complaint at ¶¶ 33-34.)  The amount of individuals Defendant identified multiplied by $75,000 (the amount of Plaintiff's purported damages) places the amount in controversy at **$132,450,000** ($75,000 x 1,766 individuals).  These calculations alone demonstrate that the amount in controversy exceeds $5,000,000 as required by CAFA.

33.    Alternatively, Plaintiff's Complaint was filed as an "unlimited" jurisdiction civil case on behalf of the Putative Class.  As such, Plaintiff is claiming that the monetary damages and restitution she is seeking exceeds the $25,000 minimum jurisdiction limits of the California Superior Court,[3] which is confirmed by the fact that she designated her case as

---

[3]    *See* California Code of Civil Procedure §§ 86(a) and 88.

"Unlimited (Amount demanded exceeds $25,000)" on her Civil Case Cover Sheet. (Siegel Decl. at ¶ 2, **Exhibit "A"** [Civil Case Cover Sheet].)  Plaintiff further contends that "Plaintiff and class members…received the same standardized documents and/or written policies" and that Defendant communicated and implemented "company-wide policies, including time keeping polices and meal and rest period policies, to employees throughout California." (Complaint at ¶¶12-13.)  Thus, another plausible reading of the allegations in the Complaint is that Plaintiff is seeking at least $25,000 [the unlimited jurisdictional amount] per putative class member.  If the Court multiplies 1,766 (the approximate number of non-exempt individuals that ended their employment with Defendant (for various reasons) between September 22, 2018 and the present) by $25,000, the alleged amount in controversy is **$44,150,000.**  This conservative reading of Plaintiff's allegations also demonstrates that the amount in controversy exceeds $5,000,000 as required by CAFA.  *See Abrego v. The Dow Chem. Co*., 443 F.3d 676, 689 (2006) (finding jurisdictional amount met where complaint sought no specific amount in damages but pled the amount in controversy to exceed $25,000 and there were 1,160 class members).

34.     Finally, and without admitting that Plaintiff could recover any damages whatsoever, a plausible reading of just the sixth causes of action alleged in the Complaint also places an aggregate amount in controversy exceeding **$6,247,401.60**, exclusive of attorneys' fees, interest, and costs, as follows:

a.     <u>Sixth Cause of Action – Wages Not Timely Paid</u>: Plaintiff alleges that "Defendants willfully failed to pay Plaintiff and class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ." (Complaint at ¶93.)  Paragraph 94 of the Complaint alleges that "Defendants' failure to pay Plaintiff and class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two hours of their leaving Defendants' employ, violates Labor Code sections 201 and 202." (Complaint at ¶94.)  As a result, Plaintiff contends that "Plaintiff and class members are therefore entitled to recover from the Defendants the statutory penalty wages

for each day they were not paid, at their regular rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code section 203." (Id.) From September 22, 2018 and the present, approximately 1,766 non-exempt employees in the State of California ended their employment with Defendant. (Clark Decl. at ¶7.) According to the Complaint, these individuals would be part of Plaintiff's putative class and entitled to damages. (Complaint at ¶¶33-34.) The hourly wage for these non-exempt individuals no longer employed by Defendant ranged from $10.50/hour to $33.66/hour and averaged $14.74/hour. (Clark Decl. at ¶8.) For purposes of removal, the Court can assume that each putative class member is entitled to maximum penalties under California Labor Code section 203. *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal."); *See also Arreola, supra,*, at *4 (allowing Defendant to assume a 100% violation rate for removal purposes.) The maximum Labor Code section 203 penalties for an individual making $14.74/hour would be $3,537.60 ($14.30 x 8 hours x 30 days). Based on the allegations in the complaint, all 1,766 individuals who have departed from their employment with Defendant are entitled to maximum Labor Code section 203 penalties at the average hourly wage, thus the alleged amount in controversy for Plaintiff's sixth cause of action alone is **$6,247,401.60** ($3,537.60 x 1,766 individuals). Once again, the alleged amount in controversy exceeds CAFA's statutory requirements.

35.    Plaintiff also seeks an unspecified amount of attorneys' fees in her Complaint, which the Court should consider and include in the amount in controversy. (Complaint at ¶¶53, 59, 120, 126, Prayer.) *See, e.g., Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g., McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010)

(affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

36. "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing Defendant can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC*, No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

37. The Court should therefore also consider attorneys' fees of at least $1,561,850, a conservative estimate at 25% of the aggregate amount in controversy calculated in

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT

Paragraph 34 above. *See, e.g., Oda v. Gucci Am., Inc.*, 2015 U.S. Dist. LEXIS 1672, at \*11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

38.     Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims surpasses the $5,000,000 jurisdictional threshold required under CAFA.

39.     Based on the foregoing, Defendant hereby respectfully removes the above-captioned action from the Los Angeles County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully requests that this Court retain jurisdiction for all further proceedings.

Respectfully submitted,

Dated:  June 12, 2020                         JACKSON LEWIS P.C.

By:     */s/ Adam Y. Siegel*
        Adam Y. Siegel
        Carmen M. Miranda

        Attorneys for Defendant
        CLAIRE'S BOUTIQUES, INC.

4844-7935-9935, v. 3

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT